Mr. Galloway, on behalf of Ms. Galloway, I would like to hear the argument on behalf May it please the Court. My name is Corey Zyedell and I am here today representing Jacqueline Galloway. She requests that she be allowed to pursue her causes of action in the United States District Court of Maryland rather than in arbitration or in the alternative, that she be awarded the chance for a jury trial on the issue of which of the potential three contracts, the retail and salmon sales contract, originally entered into, the amendment agreement, that is unsigned by state financial or some oral agreement after November 14th, 2008, controls the contractual relationship between the parties. In order to compel a party to arbitrate, the Federal Arbitration Act requires that the moving party prove with summary judgment type evidence that there is a written agreement that includes an arbitration clause. The only of the three potential contracts that's in the joint appendix, in this case that contains a written arbitration agreement or clause, is the amendment agreement. So I think it's important to know what evidence is in the record and what evidence is not in the record. What's in the record is the retail and salmon sales contract that everyone agrees the parties entered into. Galloway was with City Financial Auto. Now, unless there's something that changes that contract or modifies that contract, that's the contract that Then there's Galloway's testimony under sworn affidavit declaration that's part of the record in which she states that the parties were still negotiating after she signed that agreement after November 14th, 2008. And then there's also the account payment history in the record. Here's what's missing from the record. What's missing is an amendment agreement that's signed by City Financial Auto, a letter from City Financial Auto to the amendment agreement. City Financial's internal account records stating in any which way that they have approved the amendment agreement or any document or sworn testimony tending to prove that either Galloway or City Financial Auto were performing in accordance with the amendment agreement. So I'd like to focus my argument on two portions of what was briefed. Santander is the assignee of City Financial Auto of the retail installment sales contract. I want to focus on Santander's failure to produce an amendment agreement that's executed by City Financial Auto, and I want to focus on Galloway's entitlement to a jury trial. The retail installment sales contract, it specifically states that any change to the retail installment sales contract, it must be in writing, it must be signed by the creditor, and no oral amendments are binding. Now, that has legal significance under Maryland contract law, because under Maryland contract law, a signature is not required to enter into a contract unless the parties state that assent to a contract is based on a signature. So that's what's in the retail installment sales contract. This has been affirmed in Eastover Stores v. Minix, which is the Court of Appeals, and more recently by the Court of Special Appeals in Maryland in Well, on this basis alone, the district court should be overturned. Without the need for a jury trial, as a matter of law, without that signature on this amendment agreement, there is no proof that City Financial Auto assented to the terms of the amendment agreement. And that's the end of that analysis. I have no further argument on that. I think what Judge Blake missed on this argument in the district court is that she focused on the fact that there was no requirement in the amendment agreement that there be a signature in order for it to be binding. But what the argument is, is that the retail installment sales contract required that there be a signature. So she didn't directly address the original argument, and so I wanted to put that before the Court. On the issue of entitlement to a jury trial, now this more relates to the evidence that was before the Court. The Fourth Circuit just recently issued a published opinion in which the Fourth Circuit adopted the Second Circuit's view of when a party is entitled to a jury trial under the Federal Arbitration Act. And in that case, they adopted the Second Circuit standard, but there was no, there was nothing to apply because the evidence in that, in that case, did not go to whether or not the parties entered into an agreement, but more so tended to dispute what the agreement meant. So under the Second Circuit standard, which is now the Fourth Circuit standard, all that's required is an unequivocal denial that an arbitration agreement existed and then sufficient facts to support it. Or in other words, so in this argument, the facts have to be reviewed in the light most favorable to arbitration. So this evidence of whether there was a meeting of the minds has to be favoring Galloway. It's our position that Judge Blake did the reverse. And it's our belief that that was the case because under very heavy arbitration precedent, the rule is that you favor arbitration. Very, it's a Federal policy to favor a contract with an arbitration agreement. It goes to the scope of the arbitration agreement. This argument goes to whether or not under Maryland contract law, the parties agreed to the terms of the amendment agreement. Let me ask you this. Hadn't you been paying $366.43 since 2008? Correct, $366.43. They've effectively agreed on this sum and those terms for seven years? They agreed, right, the monthly payment, lowering the monthly payment from the original amount down to $366.43. There's no question that at some point That's correct. But that's not what the amendment agreement says. The amendment agreement says that she would pay $365.57 a month. It also said that it would become effective October 31st, 2008, that the payments would be due on the 14th of each month. And in accordance with that agreement, the late fees would be set at 10% of whatever that monthly payment would be. Judge Blake made a statement about how it was a de minimis change. It's only 86 cents a month difference. So I would compare that to a gallon of gas. If you pull up to a gas station and prices are low now, so let's say it's $1.80 a gallon. And you go up to the pump and the pump says it's $1.82 a gallon. It's just two cents. It's not a huge deal if you're driving a Civic. But if you're driving an 18-wheeler, that two cents multiplied over 300 gallons that you're putting in the tank turns into a lot of money. This is a 72-month loan. 86 cents seems not like a lot in the abstract, but for someone who's having trouble paying their loan, who needs a modification in order to stay current, 86 cents matters over time. And it's not just 86 cents, it's the interest that's added to the 86 cents. It's also the difference in the payment due date in which the due date gets moved forward by a day. Someone who's having trouble making their monthly payment on the 14th she did, in fact, have even more trouble after that. That four late fees were charged to her account by Citi Financial Auto earlier than it would have been under the amendment agreement. It seems to me what you're getting at is really whether the fact that it was such a low amount reforms the contract to say that's okay. The question is, under Maryland law, has the Maryland Court of Appeals ever employed such a de minimis type rationale? Well, Your Honor, I've looked at this up and down. I'm sure the Court has as well. The Maryland Court of Appeals has always held and stated that acceptance of a contract requires unqualified acceptance. Now, there's no case in which the Maryland Court of Appeals has said, well, this change is so small that we're just going to let it, we're going to let it be, we're going to say it's a contract. In fact, the Maryland Court of Appeals has repeatedly stated that silence does not equal acceptance. So under this circumstance, what we are looking at is Galloway saying I will pay this amount in the amendment agreement. Citi Financial doing nothing, if we take away her testimony that she spoke to them and that they agreed to a lower amount. And then Galloway making payments. So in that scenario, Galloway is the offeror and she's the acceptor. That just can't be the case. So there's no Maryland Court of Appeals or Court of Special Appeals opinion that says, you know, this is a small change. It's a de minimis change. So we're going to let it go. And I'd argue that it's not a de minimis change. Judge Blake was only looking at this 86 cent difference. But it's not just 86 cents. The amount that's owed on the loan is greater because the effective date is later. The amount of interest that could be charged is greater because the amount is greater. She misses payments because the amount is greater. And. So, you know. To the effect of whether or not she gets a jury trial. The only way she would not be entitled to a jury trial is if the court completely disregards her statement made under oath that she was still negotiating with Citi Financial after she signed this document. That is her unequivocal denial that Citi Financial Auto accepted this amendment agreement. If Citi Financial had accepted the amendment agreement on the terms that are on this document that's in the record, what purpose would there have been for her to have a conversation with Citi Financial Auto about what amount she'd be paying a month after she signed this document? She comes in, she provides testimony stating this was not a done deal. Citi Financial did not accept this offer. Santander has nothing to say on this matter. They weren't a party to this contract. They hadn't been assigned this contract at the time. The only person that could rebut this is Citi Financial Auto. And Santander didn't put anything in the record related to Citi Financial Auto's perspective on this or any of their internal documents related to this. So, unless the court has further questions, I'll just rest on that and reserve time for rebuttal. Okay. Thank you, Mr. Zantel. Thank you. Let's hear from the party representing Santander Consumer USA. Good morning. May it please the Court, my name is Robert Brenner. I represent the appellee, Santander Consumer. The issue in this case is whether there exists a valid and enforceable agreement between the parties which contains an arbitration provision, and the answer to that is yes. There are no material fact disputes here, none. Ms. Galloway asked in approximately October 31st, 2008, she sought a modification. Is it your statement that it is the amendment agreement that constitutes the contract? Well, both the risk and the amendment agreement constitute the contract. The amendment agreement had two terms, three terms really. The first term was that the risk remains valid and enforceable except as modified in the amendment agreement. It also, the amendment agreement had then two terms besides that one. One was lowering the monthly payments, and the other contained an arbitration provision, which was the entirety of the second page of the amendment agreement. Was there another document that had the arbitration clause in it? No. It was in the amendment agreement. It was the amendment agreement that you rely upon to indicate that arbitration is binding here. Correct. And this agreement, just to make sure we have the facts, was signed by the plaintiff and not by the defendant? The amendment agreement was signed by Ms. Galloway. There is a spot where it says city financial. It's not a signature block. It just says city financial. We would argue that is a signature, but even if it wasn't a signature. Let me, before you move there. Sure. Does the agreement not state that city financial must engage in further review, approval, and consideration? It says that in the cover letter, yes, and it also says that in the agreement that city. If that is true, then how is it that you maintain it has already signed it at that point? Well, it can sign it and then it can ratify it by its actions, which it did here. It accepted the lower payments, and for four years plus, Ms. Galloway made payments. City financial took the money and accepted that under the amendment agreement. The district court seemed to indicate that city financial accepted the agreement upon the signature of Ms. Galloway. Does that indicate from the district court perspective that she was the offeror? The district court said that the offer came from Ms. Galloway and it was accepted by city financial. That was the district court's conclusion. Is that your position, that there was an offer from Ms. Galloway and accepted by city financial? Our position before the court was that the – No, no, is that your position? Today that – no, today I said in the brief that our position is that the offer came from city financial and Galloway made the acceptance, but also in the brief I – The district court erred in making a fine into the contrary? No, I don't believe the district court erred. So it was correct for the district court to say – I'm not trying to put words in your mind. I'm just trying to understand the position here because it's odd for the district court to say that she was the offeror. City financial accepted, but you say that's not incorrect. I don't think it's odd for the district court to make that determination. I don't think the district court made an error. The district court concluded that the offer came from Ms. Galloway and city financial accepted it. To be fair, at the time we made the motions, we argued that the offer came from city financial and the acceptance came from Ms. Galloway, but however you analyze the offer and acceptance, there's no doubt that there was a meeting of the minds here. The parties intended to enter into the amendment agreement. She asked for a modification. She received the modification. Let me ask this question. I know it's extrinsic, but I'm trying to understand. Is this the usual way city financial does these contracts? Send it to someone and they sign it and they never sign it? I represent Santander. Santander was the assignee. I can't speak on behalf of city financial, but I can speak on behalf of Santander, and there's nothing unusual about what occurred here. So that's the usual course of business. You send a contract to someone, the person you send it to signs it, and the business never signs it? Well, the business doesn't have to sign it if the business puts a block that says city financial, which it did here, but in any event. City financial and what, a little S slash or what? No, there was no S slash. You maintain as a lawyer that that's a signature? Is it physically a handwritten signature? No, it's not. Well, it shows that city financial. It's a statement that near putting a name at the end of a document signs that document, and it's typewritten. Understood. In this context, I believe that is a signature in a sense, but even if it is not. Well, I want to get into even or not. I want to deal with that first because I find that an odd statement, that just the typewritten name constitutes a signature. Has any case ever held that? No, but we're not relying on that position in connection with this. I want to get that one off the table. If you're not relying on it, that's probably good. So go with the position you're relying on. I did not do any research in connection with this appeal to determine whether that block that says city financial constitutes a signature, but that is not our position. We're not relying on that in connection with this appeal. We're relying upon the fact that a signature, even if a signature was a conditioned precedent, what counsel did not indicate, both in his papers and in oral argument, is that the Court of Appeals in Maryland said a conditioned precedent can be waived. The Homanian case said that. So the fact that there isn't a signature here, assuming that's not a signature, and we'll hopefully move past that. How is it waived? It's waived because for several years Ms. Galloway paid under the amendment agreement, never said a word about it. Paid an amount that's not on the agreement. There was an 86-cent discrepancy. Any Maryland Court of Appeals case ever hold that that's de minimis or anything like that is de minimis, and therefore if you do something of that nature, that's okay. The cases are legion in Maryland that in order for there not to be a meeting of the minds, there must be some material differences between the offer and the acceptance, and 86 cents is not a material difference. The only difference here is that 86-cent discrepancy. And so there is a meeting of the minds here. There's no council did not cite a single case saying that this 86-cent discrepancy constitutes a lack of intent on behalf of the parties to enter into an agreement. The cases that he cited all dealt with crossing offers or significant changes to the terms of the agreement. Is it a severable contract? Is this a? Is it severable? In other words, if there are provisions in it that are not effective, is it still an effective contract? I believe that's the case, yes. But even if the 86 cents is considered more than de minimis, the parties, it was a modification, and as the court below said, the modification was accepted by Ms. Galloway for almost. Ms. Galloway makes it clear. She says, you know, she wasn't pre-approved for any loan or anything, so any contract she had with this group was oral. She doesn't say that. Her certification does not say that. It simply doesn't say there was more negotiation going on. It doesn't say that there was an oral agreement. Those are conclusions reached by counsel. It's just an oral because you talked about it, and, you know, the contract itself wasn't pre-approved. You got up there to statement that you've got to do more something to it, so the financial can look at it and do more approval or whatever, and that hadn't happened, so what we now have is an oral contract. No, it did happen because she sent back the amendment agreement, signed it, and immediately thereafter when her payment was due, her payment was due mid-December, she made a payment on December 13th, and she continued to make payments mid-month as required under the amendment agreement for four and a half years. So she was following the amendment agreement. Her actions indicated an intent to enter into the amendment agreement. Same with Citi Financial. Citi Financial accepted the lower payments. So how do we end with this? It just seems to me we've been going round and round, going back and forth to facts, and I appreciate your very direct answers. Why is this not a jury question? Why don't we just send it to court for that determination? Because there are no material fact disputes here. Well, I can know that's your position. There is a position that's opposite of that. But the only material fact, there actually isn't, because what Ms. Galloway is arguing here is that there are material fact disputes, but all they're doing is characterizing the record evidence in a way that they're arguing under the law is not a binding and enforceable agreement. But the facts themselves, all of the facts, the parties agree. There isn't a single dispute about the material facts here. And so as the lower court correctly concluded, and I would argue this court can conclude, as a matter of law, there's a binding and enforceable agreement here that contains an arbitration provision. And it very well be that a court could find that's an old agreement. I just find it really unusual or odd that a corporate entity who has an agreement that, for the most part, is going to be signed because you don't get the car if you don't sign the agreement, you don't get the amendment if you don't sign it. It's probably going to be signed. It sounds like it's a rather little perfunctory step to simply append a corporate signature or seal or whatever onto it to say, okay, we have an agreement. But here you simply just have her signature and then just a typewritten name. And for all that this agreement does and all that the entity has in terms of its ability to be able to negotiate and seek, it wants the advantage of not putting a signature on it. It seeks no advantage here. There was no advantage. When you get to your first point. It becomes a contract. That's what it is. They want the advantage of having a contract. That's what I mean. It wants the advantage of saying we simply typed our name on it. Anything we sent out to you with our name, I don't think we would hear that argument, that anything we sent out with our name typed in the bottom constitutes our signature to anybody out there. And I don't know if this is some unique area of the law that we can carve out this exception, but that just does not seem to be a good argument to me from a corporate perspective, not just for this case but future going on. It might work for here. I don't think you want to be held to that standard in the future. But that's not what we're relying upon here. We're relying upon the district court's determination that the offer and acceptance came, Citi Financial made the offer, Galloway made the acceptance, and we're arguing that a binding. Was that oral or was that on the document you were talking about? On the document. There's no oral agreement here. There's not even a. . . No, the district court said she made the offer, right? No, the district court said that the offer came from Citi Financial. I thought the district court said she did, but I can look at that. And I think it doesn't matter. I'm sorry. I may have it. I'm sorry. Yeah. The bottom line is my hangup is the fact of is that signature sufficient to convey a signature to show you are making an offer, that by your simply signing it, it becomes now binding, even though it says right on it that there's more to be done. The only more to be done is that Citi Financial must approve it. It doesn't say it has to be in writing. Isn't that pretty big? They have to approve it? It did approve it because. . . But they had to. That's the future. You didn't say they did it before she sent it to them. They now have to approve it after she's done it. There's nothing to indicate they've done it. Well, actually, there is because for. . . It's not in that document. It doesn't have to be in the document. There's nothing in the document that says that any approval has to come from Citi Financial in writing at all. Now, tell me, are we relying on extrinsic evidence, or did we look at the document here? No, the analysis is the totality of the circumstances and looking at whether there's an offer and acceptance. And here there is no doubt that she asked for a modification and she received a modification. There is no dispute that she. . . No doubt about it. No doubt that it especially states that Citi Financial must engage in further review, approval, and consideration. And it did so. After? When? I mean, who knows? I mean, how does she know this? Well, we do know because for years she made the payment and Citi Financial accepted the payment and accepted the lower payments and they continued on under that agreement. There's no evidence, nothing in the record to suggest there's any oral agreement. There's nothing in the record to suggest there was even a discussion after she signed it. If you look at her certification or affidavit, she doesn't say anything of that kind. The agreement here was made and for four and a half years she abided by it and didn't say boo about it. Neither of the parties did. It was only after, not even in a complaint, and not even after her car was repossessed, it was only in response to our motion to compel arbitration that she said, wait a minute, there's no agreement here. But for years she never said anything about it. And now she's coming back and she's saying, I accepted those lower payments. I got the benefit of the amendment agreement. I was able to lower my payments, as I requested, for four and a half plus years, and now my only obligation under the amendment agreement, I'm going to turn my back on that and not comply with it. There's no really long-term benefit that comes from a case like this, is it? Because in the future I would imagine these corporate entities are going to make sure they put their signatures on that document. Is that right? Yes, but I don't think this We're talking about this case and even if it went to trial or whatever happens to it, that's kind of the end of it. I don't think It's a lesson learned that you don't do this or you don't go about it. But we're not talking about something that from now on you're just going to send documents, just type there, and don't ever put a signature or anything on it. I think that respectfully, with respect to this case, there's no long-term ramifications of this case. This case is a simple dispute. You're going to spend a lot of money to bring all these appeals up as opposed to just going to court on it. I'm not even sure the damages that arise, if you even should prevail, would go to that level. That's an entirely different area that I could opine upon but is not the subject of this. But in this respect Because you're going a long ways to make a point. Which side? I think the corporate entity is in a position to make the side since you want to have a motion to compel. Well, we made a motion to compel based on an agreement that she signed that she accepted, that she complied with for years and is only saying now there's no contract because she doesn't want her case to be subject to arbitration. But if you accept the agreement, I don't want to get too much into UCC, you accept the agreement and you start complying with it, party it on the other side, never signs it, can you revoke it at any time? No, I don't think there can be a revocation here because, again, we're talking about the signature issue again and that issue is not the subject of our position here. But Citi Financial's actions for years demonstrated that it accepted the amendment agreement. Both sides did. The record evidence, and there, again, no material facts here, fact disputes here, the record evidence demonstrates that both sides intended to enter into the amendment agreement and both sides complied with it. She made her monthly payments, or didn't in some cases, for years and never said a thing about it. And Citi Financial, for its part, lowered her monthly payments and accepted the monthly payments for years and never said anything about it. So I would argue that the district court got it right by demonstrating that the parties intended to enter into the agreement and that this court should affirm that decision. If I can, in my remaining minute and a half, just hit on a couple of points here. Council argues that there might have been some third-party agreement out there. But there's nothing in the record to suggest that there is some third agreement out here or any oral agreement. And as I said before, with respect to the jury decision, there are no material fact disputes here. What Ms. Galloway is arguing is she's interpreting the facts, but there's no fact dispute here that would be for a jury to decide. So this court can decide as a matter of law that it's a binding and enforceable agreement. And just to tick off a couple of points, the 86-cent discrepancy, at the end of the day, even if it was a modification, it was accepted by the parties. And it seems to me the plaintiff does agree to that. She just says it wasn't accepted in that writing. But there's no evidence to suggest that there was any other agreement whatsoever, an oral agreement, written agreement, or otherwise. But the parties' actions, all they demonstrate, there's no dispute, that they demonstrate that the intent of the parties was to abide by the intent. Evidence of a lowered payment. And there's no indication of a modification payment. So they could have said, hey, you know, could have been. I mean, something different. I mean, there's some indication this is not the agreement. But she's not paying it. And even though it is 86-cent, corporations do not take a payment that's less than what's there. They will charge you a late fee for that. And particularly when you have this kind of tenacity about it. They don't let a dime go. So there's some evidence of this. She says it. She says it. She averts it. She testifies. She says, no, I don't have an agreement in writing. I have an agreement to come, but it's not in writing. She's got a, respectfully, a self-serving affidavit saying there's no agreement. But as the Chorley case, the Fourth Circuit case, determined or stated, you need to. It's an agreement. She did say that it's an agreement. She just says it's not in writing. But she offers no evidence of any kind to suggest that there's some other agreement other than the amendment agreement. The Chorley case requires more than just a self-serving affidavit. There has to be evidence to that effect. And the only evidence before the court is that the parties intended to. This agreement didn't come to her just unsolicited and did not come out of a whole cloth. There's some conversations that are going on that led to this agreement coming to her and led this paper coming to her. And what she is saying is that constituted the contract, but that paper is not in writing. And she's backing it up by saying, I didn't pay that amount. She's not backing it up. She offers no evidence whatsoever that there was any discussions. I didn't pay that amount. Let's say that backs it up, that she didn't pay that amount that's on the contract. She paid 86 cents more, correct, but there's no evidence that. What if it had been $100 less? Would you have a problem then? At some point, it becomes a material difference. Who makes that determination? As a matter of law? As a matter of law, it can be made. You can determine whether the. What is that determination? Tell me when you're going to get there because I need to know. Because we write an opinion like that, I need to be able to tell folks if 86 cents is the difference, we're good. If you get to $100, it's too much. Give me that figure. We're going to write that opinion and say when that is under Maryland law. You do not have to make a bright line distinction, but the cases indicate under. Keep it nice and simple by saying if you pay that which you're supposed to pay, unless it's something maybe you come in and reason why, then you are bound by the contract. The cases in Maryland demonstrate that there must be material differences between the parties. There was not a material difference here between the parties. It was an 86-cent discrepancy. And in any event, the 86-cent discrepancy was modified and accepted, and she waived any argument. All right, last question. Material difference. Question of law, question of fact. I would say a material difference can be a question of law for the district court to determine, that they can make a determination whether there was an offer and an acceptance. And as the courts have opined, when the two parties are going back and forth and one party is saying X and the other party is saying Y and X and Y are different, the court says there's no meeting of the minds. But here there is a meeting of the minds. She did accept it. She paid it for four years and never said a word about it. There's no evidence to the fact that any of the parties did anything but intend to abide by the amendment agreement. I think I've gone way past. It wasn't your fault, though. You've got a lot of questions to answer. Can I take a moment just to wrap up, or would you? If you can do it in 30 seconds. Okay. I'll get back to the signature for just a moment. With respect to the signature, the signature inures to, you can argue it inures to either benefit, a benefit of either Ms. Galloway or city financial. But the Hounanian court made it clear that you can waive conditioned proceedings. They can be waived by the actions of the parties. And in this case, Ms. Galloway never said, hey, what are you talking about? We don't have an agreement. She never made a phone call. There's no written communication of any kind. Likewise, city financial never said anything about an amendment agreement not being entered into. So signature or not, that signature can be waived by the parties, and here it was done so. Thank you. Thank you, Mr. Brenner. Mr. Zeldale, reply. All right. Thank you, Your Honors. Briefly, I just wanted to state that this issue about the signature block being a signature, Santander, they never even claimed that that was a signature in the district court. Their argument the entire time was that there was no need for a signature. So I don't even know, I don't even understand that argument today. The second thing I want to straighten out is that the district court, Judge Blake, she found consistent with Fourth Circuit precedent that the amendment agreement was not an offer because it reserved the right for approval, which is exactly what this court held in Spaulding v. Wells Fargo Bank, which is a Fourth Circuit, this court's case in 2013, and this has arisen so many times I can't put a number on it.  Hot-button litigation for the last five, six years where individuals contact the bank, they ask for a loan modification, the bank sends them an agreement that says, you know, this is what the agreement will look like, but we're going to have to approve it after you sign it. That's exactly what happened in this case, and it's exactly what happened in this Wells Fargo case. And so I want to address Judge Wynn's concern about whether this issue only relates to this case, this signature issue, the fact that City Financial didn't sign this document. It's really important. It's more important than this case because the reason that the banks aren't signing the agreements is because they can later go back when this litigation arises and say, oh, no, we never agreed to this, which is exactly what happened in the Wells Fargo case. You got a case in which they've done that? Not City Financial Auto. Yeah, have you had a case that comes up and they come back and say that's not our agreement? Where they say because we didn't approve it. You're saying they did it intentionally. That's quite a statement. No, no, I'm saying banks have a reason to not sign these documents. There is a benefit to them to not sign these documents because how many consumers are going to stand up and contest?  They come into court and then Wells Fargo says, in this case, well, we never approved this. There are several cases in the United States District Court of Maryland where the same thing happened, and I've cited to those in the brief. So in addition, I just want to throw out there. Couldn't they have signed it at any time? I mean, could the bank, even after this all gets up, could they have just taken that document that day and signed it, made the law that day? Let's say after Ms. Galloway makes her first $366.43 payment and then City Financial goes and signs that document. Well, that offer is not on the table anymore. They're signing a nullity. She is paying an amount based on what they have expressed she can pay. She tells them, I'll agree to pay this $365.57. She winds up paying $366.43, not on her own volition. Why would Ms. Galloway pay more than the agreement when she is struggling to make her payment to begin with? Eighty-six cents matters to her. I guess I was trying to get the UCC law on it, not the specifics here. Someone makes an offer, which ostensibly Citibank does, goes to someone else, they sign it. They start performing on the contract. The other never signs it, but then sometime during the course of dealings, they actually do sign it. Is it a contract? Your Honor, in this case, I would argue that it's not a contract because the contract would be the contract that Ms. Galloway was performing. The contract that, in this instance, City Financial would have signed is not her offer anymore. They didn't. Of course, that didn't happen. It didn't happen. And I would also add that I'm not sure the UCC applies to this contract anyway. It was entered into under Maryland Credit Granters Closing Credit Provisions. It's a whole – we've had history in that area, in other cases. In any event, I want to quickly address this waiver of the signature requirement. And Santander argues that even if I'm right on all these issues, Galloway waived this requirement that City Financial sign the amendment agreement because she performed for four years or six years or however many years it was. She never objected. But the contrary position to that is, what would she have been objecting to when her subjective belief was that that provision didn't apply to her? Santander is in here today saying, well, she never said that she didn't want to arbitrate. But why would she say that? Her entire position in this case is that that is not her agreement with City Financial. Her agreement was to pay $366.43, which was agreed to after November 14th, which is after the day that she signed this document. So in order for her to have waived or in order for her to be stopped, she'd have to be waiving or stopping her rights under the amendment agreement. She could not have been waiving or she can't be stopped from arguing that she has waived or stopped under the retail installment sales contract or the subsequent oral agreement because that provision doesn't exist in those contracts. And finally, Santander takes the position today that there's no dispute on any of the facts. Well, if that's the case, then they're agreeing that City Financial agreed to modify the payment to $366.43 after she signed this document. I don't know how she would be restricted at the very least from a jury trial on that issue if Santander agrees with that. I see my time is up, and I thank the Court for it. Thank you, Mr. Zabel. I'll ask the Clerk to adjourn the Court, and then we'll come back.
judges: William B. Traxler Jr., G. Steven Agee, James A. Wynn Jr.